UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| FRANK GALLARDO,<br><br>　　　　　Movant,<br><br>　vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | 5:22-CV-05007-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on the *pro se* motion of Frank Gallardo to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  Now pending is a motion by respondent the United States ("government") to dismiss Mr. Gallardo's motion without holding an evidentiary hearing.  See Docket No. 23.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 57.11.

**FACTS**

**A.    Pretrial Proceedings**

A criminal complaint was initially filed charging Mr. Gallardo with abusive sexual contact of a minor.  CR Docket No. 1.  That complaint was

---

[1] Documents cited from this civil habeas file will be cited using the court's assigned docket number.  Documents from Mr. Gallardo's underlying criminal case, United States v. Gallardo, 5:15-CR-50061-JLV (D.S.D.), will be cited using the court's assigned docket number preceded by "CR."

replaced by an indictment two months later which charged Mr. Gallardo with two counts of sexual contact with A.B., a child under the age of 12 on March 12 and March 14, 2015.  CR Docket No. 4.  The indictment recited that A.B. was an Indian child, that the events took place in Indian country, and referenced 18 U.S.C. §§ 1152, 2244(a)(5) and 2246(3) as the charging statutes.  Id.

Mr. Gallardo was arrested on the indictment in Montana on October 16, 2015.  CR Docket entry after entry 11.  At his hearing in Montana, Mr. Gallardo waived his right to an identity hearing, admitting that he was the person named in the District of South Dakota indictment.  CR Docket No. 13-2.[2]  The District of Montana court ordered Mr. Gallardo to be transported to the District of South Dakota by the United States Marshal.  CR Docket No. 13-1 at p. 1.

Mr. Gallardo made his initial appearance in this district on November 20, 2015, and was ordered detained.  CR Docket Nos. 17 & 18.  During the hearing, the magistrate judge asked how to pronounce "Gallardo" and Mr. Gallardo obliged with the correct pronunciation.  CR Docket No. 24 at p. 3 (transcript of initial appearance).  The court then asked if he was "Mr. Gallardo," and he responded "yeah."  Id.  Attorney Jamy Patterson noticed her appearance as retained counsel on behalf of Mr. Gallardo.  CR Docket Nos. 15 & 24 at p. 6.

---

[2] Mr. Gallardo signed the waiver form "Frank Thunder Hawk."  CR Docket No. 13-2.

Three weeks later, on December 11, 2015, Ms. Patterson moved the court to continue the deadlines in the scheduling order, noting that a jury trial had been set for January 26, 2015[3], [sic] and that counsel needed additional time to locate witnesses, complete her investigation and prepare for trial.  CR Docket No. 21.  Accompanying Ms. Patterson's motion was a waiver of the right to a speedy trial signed by Mr. Gallardo.[4]  CR Docket No. 22.  The district court granted the motion and set a new trial date of March 22, 2016.  CR Docket No. 23.

On March 4, 2016, defense and government counsel stipulated that there were still 50 days remaining under the Speedy Trial Act ("STA") for Mr. Gallardo's trial to be held.  CR Docket No. 40.  Two days earlier, Ms. Patterson had filed a motion seeking admission of evidence at trial that the victim, A.B., had previously been molested by another person.  CR Docket No. 36.

On June 7, 2016, Ms. Patterson moved to dismiss the indictment under the STA, arguing that all briefing on defendant's motion (Docket No. 36) had been completed by March 17, 2016; that the court was allowed to exclude the briefing time plus 30 days following the filing of the last brief from the STA calculation; that even allowing for the exclusion of the briefing time plus the 30

---

[3] The original scheduling order listed a jury trial date of January 26, 2016.  CR Docket No. 19 p. 2.

[4] Although Ms. Patterson typed the name "Frank Gallardo" on this form proposed for her client's signature, Mr. Gallardo signed the document "Frank Thunder Hawk."  CR Docket No. 22.

days, it had been more than 70 days since Mr. Gallardo made his initial appearance on November 20, 2015.  CR Docket No. 51.

The court denied the motion, noting that counsel's reliance on subsection (h)(1)(H) of 18 U.S.C. § 3161 was misplaced because the motion made by counsel required a hearing before the motion could be resolved and no hearing had yet been held.  CR Docket No. 56.  Furthermore, the court observed that Mr. Gallardo's earlier waiver of his STA rights tolled the running of the STA time until March 26, 2016, by the very terms of the waiver and accompanying motion, so his STA clock did not resume running until that date.  Id.  Then, the court noted, the STA clock was tolled again by counsel's filing of the motion to dismiss.  Id.  Jury trial was scheduled for August 30, 2016.  CR Docket No. 60.

Ms. Patterson moved for the issuance of trial subpoenas for ten witnesses, some of whom were also government witnesses, and the court granted her motion.[5]  CR Docket Nos. 68 & 69.  Ms. Patterson also made a motion *in limine* to exclude any hearsay statements made by A.B. to the child forensic interviewer, Brandi Tonkel, as well as to exclude any expert testimony from Ms. Tonkel.  CR Docket No. 70.  The motion also sought to exclude any evidence that Mr. Gallardo had engaged in a high-speed chase with police, fled the jurisdiction, or had been sought, wanted, or captured by the FBI.  Id.

---

[5] The ten witnesses were:  Vanessa Swallow, Alfred Swallow, Cedric Young Bear, Sr., Suzette Thunder Hawk, Don Myers, Lauren Craft, Elizabeth Young Bear, FBI Special Agent Bob Bennett, Brandi Tonkel, and Barbara Neiwswander.  CR Docket No. 68.

The district court denied the motion as to hearsay statements by A.B. to Ms. Tonkel, denied the motion to prevent Ms. Tonkel giving expert testimony, granted the motion to exclude evidence of Mr. Gallardo's flight or "wanted" status, and granted defense counsel's motion to introduce the fact (via stipulation) that A.B. had been sexually abused by a third party before the events involving Mr. Gallardo were alleged to have taken place. CR Docket No. 94.

A few days before trial, the government filed a superseding indictment alleging all the same statutes, facts and crimes as the original indictment except that the new indictment alleged an attempt in the alternative and specified that Mr. Gallardo performed the alleged acts "with the intent to abuse, humiliate, harass, degrade, and arouse and gratify the sexual desire of any person." Compare CR Docket No. 82, with CR Docket No. 4.

Before trial, defense counsel and government counsel stipulated that A.B. had been sexually abused by Jaron Thunder Hawk in 2013, that A.B. had reported the abuse, that Jaron had been charged, and had pleaded guilty to committing the acts A.B. alleged. CR Docket No. 93.

**B.    The Jury Trial**

Trial began on August 29, 2016, and continued until the 31st, when the jury returned a verdict of guilty on both counts in the superseding indictment. CR Docket No. 105. A.B. testified as did her mother, forensic interviewer Brandi Tonkel, and the investigating agent. See CR Docket Nos. 164 & 165.

Defense counsel called three witnesses who called into question the credibility of A.B. and her mother.  Id.

　　　After the jury had begun deliberations, a note from one of the jurors was communicated to the district court requesting that the alternate juror be allowed to substitute in for one of the deliberating jurors.  CR Docket No. 98.  The district court responded by stating that the "alternate juror has been discharged from any duties in connection with the case.  Under the law, he cannot participate in deliberations."  CR Docket No. 99.  The jury did not indicate how the jury stood in terms of agreement on a verdict at this point.  CR Docket No. 98.  And the district court did not admonish the jury to bring back a unanimous verdict at this time.  CR Docket No. 99.

**C.　Post-Trial and Sentencing**

　　　Following trial, Mr. Gallardo filed a motion with the district court seeking to discharge Jamy Patterson as his counsel.  CR Docket No. 121.  The magistrate judge held a hearing, granted the motion and appointed Ellery Grey to represent Mr. Gallardo.  CR Docket Nos. 123 & 124.  Mr. Gallardo then moved to discharge Mr. Grey, but then withdrew the motion.  CR docket Nos. 128 & 129.

　　　The final presentence investigative report (PSR) was filed July 14, 2017.  CR Docket No. 136.  Mr. Grey filed objections to portions of the PSR.  CR Docket No. 142.  Mr. Grey also submitted letters of support on Mr. Gallardo's behalf for sentencing.  CR Docket Nos. 145, 149.

Mr. Gallardo again filed a motion to discharge Mr. Grey and the court granted the motion. CR Docket Nos. 147, 150 & 153. Attorney Terry Pechota was then appointed to represent Mr. Gallardo. CR Docket No. 153.

Mr. Pechota filed a motion for acquittal and for a new trial, arguing among other things that the evidence had been insufficient to support the verdict; the alleged victim had never been examined by a medical doctor; Mr. Gallardo was denied by his attorney of his right to testify at trial; that crucial and highly probative evidence was not presented to the jury from Shelly Neprud that A.B.'s mother had said she was going to frame Mr. Gallardo; Mr. Gallardo's signature on the STA waiver form was forged; the jury indicated one of its members wished to be replaced by an alternate and, when the district court refused that request without ascertaining *why* the juror wanted to leave, the jury returned a guilty verdict shortly thereafter, giving rise to the possibility the court unduly pressured the jury to return a guilty verdict; and the district court failed to submit the issue to the jury whether Mr. Gallardo was an Indian. CR Docket No. 177. Mr. Gallardo submitted an affidavit attesting that it was not his signature on the STA waiver. CR Docket No. 179. Mr. Pechota also submitted an opinion of a document examiner that the signature on the STA waiver was not consistent with samples of Mr. Gallardo's handwriting provided to the expert specifically for purposes of examination. CR Docket No. 182-1.

The government responded to Mr. Pechota's motion for a new trial by producing an affidavit from Ms. Patterson that she personally visited

Mr. Gallardo at the Pennington County Jail on December 11, 2015.  CR Docket No. 187-2.  During the jail visit Ms. Patterson presented the STA waiver to Mr. Gallardo and discussed it with him.  Id.  Mr. Gallardo then signed the STA waiver.  Id.  Following the visit, Ms. Patterson took the waiver back to her office and filed the waiver electronically through the court's docketing system, CM/EMF.  Id.  The government also filed a copy of Mr. Gallardo's signature on the waiver of his identity hearing in Montana.  CR Docket No. 187-1.  The government criticized Mr. Gallardo's document examiner for not examining known samples of Mr. Gallardo's signatures, such as the waiver of the identity hearing, which (according to the government) clearly showed that the signatures on the STA waiver and the identity hearing waiver were the same.  CR Docket No. 187 at p. 18.

The district court denied Mr. Gallardo's motion for a new trial or for acquittal.  Docket No. 189.  The court found the evidence was sufficient to support the jury's verdict.  Id. at pp. 7-18, 36-37.  The court also found the motion to be untimely.  Id. at pp. 1-6, 18-20.

The court held the note from the juror wanting to be replaced was not grounds for a new trial.  Id. at pp. 27-28.  As to this claim, the court noted that the juror did not give a reason for wanting to be replaced and the district court when responding to the jury question did not admonish the jury that it must be unanimous .  Id.  The court found it had jurisdiction over Mr. Gallardo and the crimes charged whether Mr. Gallardo was an Indian or a non-Indian.  Id. at pp. 28-31.

The district court found that it had advised Mr. Gallardo on the record that the decision to testify at trial was his and his alone.  Id. at p. 33.  The court recounted that Ms. Patterson took a recess to discuss with Mr. Gallardo whether to testify.  Id.  When counsel announced the defense rested, the court noted that Mr. Gallardo did not ask to speak with his attorney or the court about this decision.  Id.  The district court declined to decide if the STA waiver signature was forged, but indicated the allegation did not suffice for the granting of a new trial.  Id. at p. 36.

At the subsequent sentencing hearing, the district court imposed a sentence of 36 months' imprisonment for each count of conviction, with the sentences to run consecutively for a total of 72 months' imprisonment.  CR Docket No. 202.  Mr. Gallardo timely appealed.  CR Docket No. 203.

**D.    Direct Appeal**

On appeal, Mr. Gallardo raised the following issues:  (1) whether the evidence was sufficient to support the verdict; (2) whether the district court erred by admitting hearsay evidence from A.B. through the forensic interviewer; (3) whether the district court should have instructed the jury on specific intent; (4) whether the district court should have granted a mistrial because Bikers Against Child Abuse members appeared at the courthouse in clothing with the group's insignias on it; (5) whether Mr. Gallardo's STA rights were violated; (6) whether Mr. Gallardo's constitutional right to testify was violated; and (7) whether the indictment was defective because it did not identify Mr. Gallardo as an Indian and it identified him as "Frank Gallardo" instead of

9

by his real name, "Frank Ray Thunder Hawk."[6]  <u>United States v. Gallardo</u>, 970

F.3d 1042, 1044 (8th Cir. 2020); Appellant's brief at p. 25.  The court rejected

each of these claims and affirmed the district court.  <u>Id.</u>

The court held that considering all of the evidence except the testimony

of Brandi Tonkel, the evidence was sufficient to sustain the verdict.  <u>Id.</u> at

1045.  The government was required to prove five essential elements of the

crime beyond a reasonable doubt:  (1) that Mr. Gallardo knowingly and

intentionally engaged in sexual contact with a person; (2) the sexual contact

was an intentional touching of the genitalia, groin, inner thigh, or buttocks of

the victim, through the clothing, with the intent to abuse, humiliate, harass,

degrade, or arouse or gratify the sexual desire of any person; (3) the victim was

less than 12 years old; (4) the victim was an Indian; and (5) the act took place

in Indian country.  <u>Id.</u>  The court held the testimony of A.B. satisfied all five

elements.  <u>Id.</u>

Regarding the admission of A.B.'s hearsay statements through

Ms. Tonkel's testimony, the court elided the question whether it was error to

admit this evidence, but held that if it was error, the error was harmless.  <u>Id.</u>

at 1046.  The error was harmless because Ms. Tonkel's testimony did not add

any facts or details to what A.B. herself testified to.  <u>Id.</u>

The court held that the district court properly instructed the jury as to

the intent element required by the crimes charged.  <u>Id.</u>

---

[6] The PSR filed in Mr. Gallardo's case indicated he had used a number of
aliases including Frank Thunder Hawk, Frank Lovato, Frank Ray Gallardo, and
Frank 54 Gallardo.  CR Docket No. 136 at p. 2.  Mr. Gallardo also had an
alternate Social Security Number issued to him.  <u>Id.</u>

As to the mistrial Mr. Gallardo argued should have been granted after Bikers Against Child Abuse showed up at the courthouse in regalia, the court rejected that argument too.  Id. at 1047.  When the district court questioned the jury, none of the jurors indicated that they had seen the Bikers' insignias on their clothing.  Id.  The Bikers appeared only the first day of trial, after which the district court took protective measures.  Id.  The court noted that the question of whether a spectator's conduct can affect a defendant's fair-trial rights is an open question which the Supreme Court has not yet answered.  Id.  Because there was no evidence of any impact on the jury, the court found no error.  Id.

As to the arguments that Mr. Gallardo never waived his STA rights and was denied the right to testify, the court held the issues were essentially ineffective assistance of counsel claims and declined to decide those issues on appeal without further development of the record.  Id. at 1048.

Finally, as to Mr. Gallardo's claim that the indictment was defective because he was an Indian and 18 U.S.C. § 1152 does not apply to crimes committed by one Indian against another Indian, the court also affirmed the district court.  Id.  The court held the district court had the power to try Mr. Gallardo, whether he was an Indian or not, because he was convicted of a crime that applies to Indians and non-Indians alike.  Id.  Therefore, whether the indictment failed to allege Mr. Gallardo was an Indian was irrelevant.  Id.  As to Mr. Gallardo's argument the name on the indictment was wrong, the

court only noted that Mr. Gallardo's counsel referred to him as "Gallardo" so the court followed suit.  Id. at 1044 n.2.

### E.    Mr. Gallardo's § 2255 Motion

The government, as well as this court, had some difficulty deciphering the claims Mr. Gallardo was asserting in his original pleading.  See Docket No. 1; Docket No. 24.  In his response in opposition to the government's motion to dismiss, Mr. Gallardo states "[government counsel] does not know of the case he is speaking of."  Docket No. 25 at p. 1.

Mr. Gallardo claims the government misconstrued his claims in his original petition and he states "my claims are:"

1.    My right to testify was taken from me.

2.    My signature was forged on a consent to continuance in which I was DepriveD [sic] of my right to a speedy trial.

3.    The indictment was Defective.

4.    The [district court] deprived me of my right to a mistrial.

5.    The [district court] deprived me of my right to a Hung jury.

6.    The prosecutor and [district court] violated federal court rules Because Brandi Tonkel's Testimony should not have been Allowd [sic].

7.    There was insufficient evidence to submit the case to Jury.

8.    The prosecutor said rape to the Jury and then spoke of the alleged victim being rapted by Jaron Thunder Hawk and what he did to his victim Biseno and then the prosecutor after telling the jury what Jaron did to he's victim Briseno and then [the prosecutor] after telling the jury what Jaron did to the alleged victim and he addmitted [sic] to doing to [the prosecutor] pointed at Mr. Gallardo and said he did it to her.

9.    [One of the jurors] is related to [the] alleged victim and the mother of the alleged victim.

See Docket No. 25 at pp. 2-3.

The government now moves to dismiss Mr. Gallardo's claims without holding an evidentiary hearing.  Docket No. 23.  Mr. Gallardo resists the motion.  Docket No. 25.  The court addresses the claims as clarified by Mr. Gallardo in his responsive brief as set forth immediately above.

**DISCUSSION**

**A.    Scope of a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence "upon the ground that the sentence was

imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999) (noting collateral relief may be appropriate when a movant is prejudiced by a court's error).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 158-59,167-68 (1982); United State v. Darden, 915 F.3d 579, 586 (8th Cir. 2019) (finding proper standard for reviewing claims not raised on direct appeal is cause and prejudice). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal v. United

States, 249 F.3d 747, 749 (8th Cir. 2001).  Therefore, barring a claim of actual

innocence, a petitioner must show both cause for why he failed to raise an

issue on direct appeal as well as actual prejudice caused by the alleged errors.

If a movant fails to demonstrate prejudice, the court need not address whether

cause exists to excuse a procedural default.  Moore-El v. Luebbers, 446 F.3d

890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance

of counsel on direct appeal; such claims are, therefore, properly addressed in a

28 U.S.C. § 2255 motion such as the one here.  See United States v. Campbell,

6 F.4th 764, 775-76 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654

(8th Cir. 2004) ("[I]neffective assistance of counsel [claims] are generally not

cognizable on direct appeal" and "may be heard only if a miscarriage of justice

would otherwise result . . . or if the district court has developed a record on the

issues.").  Therefore, no procedural default analysis is required before

examining petitioner's claims of constitutionally-deficient counsel.

## B.    Relitigation of Issues is Prohibited

Issues 3 (defective indictment), 4 (mistrial because of Bikers at trial),

6 (admission of Tonkel's testimony), and 7 (sufficiency of the evidence) asserted

by Mr. Gallardo in this § 2255 motion (see Docket No. 25 at pp. 2-3), were

already asserted and decided in Mr. Gallardo's direct appeal.  Gallardo, 970

F.3d at 1044.  With rare exceptions not applicable here, an issue that was

raised and rejected on direct appeal may not be relitigated in a § 2255 motion.

Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (en banc) (citing

15

Davis v. United States, 417 U.S. 333, 346-47 (1974)).  This court concludes

that issues 3, 4, 6 and 7 must be dismissed with prejudice because these

issues were actually litigated and decided in Mr. Gallardo's direct appeal.

**C.    Procedural Default**

Three other issues must also be dismissed pursuant to the procedural

default doctrine.  If an issue could have been raised on appeal and it was not

raised, the issue is procedurally defaulted.  Frady, 456 U.S. at 158-59,167-68;

Darden, 915 F.3d at 586.  In issues 5 (hung jury), 8 (prosecutor's remarks),

and 9 (relation of a juror to A.B. and her mother), Mr. Gallardo articulates

claims that could have been raised on appeal.  These are direct assignments of

error on the part of the district court and the prosecutor as clarified by

Mr. Gallardo in his responsive brief.  See Docket No. 25 at pp. 2-3.

When a § 2255 movant presents claims that are procedurally defaulted,

this court cannot reach the merits of those claims unless the movant shows

cause for the default and actual prejudice.  Bousley, 523 U.S. at 621-22;

McNeal, 249 F.3d at 749.  Here, Mr. Gallardo makes no attempt to show cause

and prejudice.  Therefore, the court cannot consider claims 5, 8 and 9.  The

court recommends these claims be dismissed with prejudice.

**D.    Whether Mr. Gallardo's Sixth Amendment Right to Effective Counsel
Was Violated**

The only remaining claims from those articulated by Mr. Gallardo in his

brief in opposition that are not barred from consideration by this court are (1)

his claim that his rights under the STA were violated because he never signed

the  STA waiver and (2) he was denied his right to testify.  The court interprets

Mr. Gallardo's claims to be asserted under the Sixth Amendment guaranty of the right to effective assistance of counsel.

### 1.    The Standard for Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it

17

cannot be said that the conviction or death sentence resulted from
a breakdown in the adversary process that renders the result
unreliable.

Id.

"There is a presumption that any challenged action was sound trial
strategy and that counsel rendered adequate assistance and made all
significant decisions in the exercise of professional judgment." Hall v.
Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted). It is the
petitioner's burden to overcome this presumption, and a "petitioner cannot
build a showing of prejudice on a series of errors, none of which would by itself
meet the prejudice test." Id. Counsel's conduct must be judged by the
standards for legal representation which existed at the time of the
representation, not by standards promulgated after the representation. Bobby
v. Van Hook, 558 U.S. 4, 7-9 (2009). " 'American Bar Association standards
and the like' are 'only guides' to what reasonableness means, not its definition."
Id. at 8 (quoting Strickland, 466 U.S. at 688).

The Supreme Court distinguishes between those cases "in which the new
evidence would barely have altered the sentencing profile presented to the
sentencing judge," and those that would have had a reasonable probability of
changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009). In assessing
the prejudice prong, it is important for courts to consider "the totality of the
available mitigation evidence—both that adduced at trial, and the evidence
adduced in the habeas proceeding" and "reweigh it against the evidence in
aggravation." Id. at 40-41 (quotations omitted). It is not necessary for the

petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quoting Strickland, 466 U.S. at 693-94). "Judicial scrutiny of counsel's performance must be highly deferential" with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 698.

### 2. Application of the Law to Mr. Gallardo's STA Claim

In Thomas v. United States, 737 F.3d 1202, 1205 (8th Cir. 2013), a § 2255 movant argued his trial counsel had been ineffective because his Sixth Amendment right to a speedy trial was violated and counsel did not move to dismiss the indictment against him. The court analyzed the issue by noting that an accused has the "ultimate authority to make certain fundamental decisions regarding the case" while the province of the attorney is to make tactical trial strategy decisions. Id. at 1207 (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983)).

The Supreme Court has recognized only four "fundamental" decisions belonging solely to the accused: the decision "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Id. at 1208 (quoting Jones, 463 U.S. at 751). The Eighth Circuit noted that the speedy trial right guaranteed by the Sixth Amendment is not among these four enumerated decisions reserved to the accused. Id. Nor is it like any of those four decisions. Id.

The court noted that the four enumerated decisions are easily understood by the accused from the perspective of a lay person. Id.  The choices involve alternatives easy for a person untrained in the law to understand (i.e. admit guilt or not), while the speedy trial right decision can involve "the complicated weighing of factors and predicting of possible outcomes." Id.  Delay is not necessarily a disadvantage to an accused but can be a strategic advantage. Id.  Therefore, a denial of a speedy trial is not an automatic violation of the Sixth Amendment, but it is subject to a balancing test. Id.

Given the nature of the right to a speedy trial, the Eighth Circuit held it was not a fundamental right reserved solely for the accused to make. Id. at 1208-09.  Instead, whether to assert a speedy trial right was a strategic decision reserved to the lawyer to make. Id.  In Thomas' case, counsel had identified reasons for not moving to enforce Thomas' speedy trial rights. Id. at 1209.  Thomas did not dispute the lawyer's rationale; Thomas complained only that the lawyer allegedly did not consult with him before making the decision. Id.  The Eighth Circuit held that counsel's decision whether to assert the speedy trial claim was a tactical decision which counsel was entitled to "properly make without his client's input." Id.  Therefore, since Thomas' only argument was that counsel failed to confer with him, and because counsel gave reasons for making this tactical decision, Thomas could not obtain relief under § 2255. Id.

The <u>Thomas</u> case applies with special force herein.  Mr. Gallardo's counsel gave reasons for the request for the continuance:  she had only been representing Mr. Gallardo for three weeks at the time she moved to continue the trial date and she needed additional time to locate witnesses and to complete her investigation.  CR Docket No. 21.  Furthermore, counsel requested only a two-month delay, which in itself is abundantly reasonable.  <u>Id.</u>  Finally, counsel showed herself more than willing to raise an STA issue on Mr. Gallardo's behalf when she moved to dismiss the indictment on STA grounds some months later.  CR Docket No. 51.

This court notes that Mr. Gallardo, like the movant in <u>Thomas</u>, never disputed his counsel's stated reasons for asking for the continuance:  i.e. that she needed additional time to prepare for trial.  He never claims this was a ruse or untruthful or that counsel *should have* been prepared for trial after representing him for only three weeks (which included a long Thanksgiving holiday weekend).  Instead, his only complaint is that counsel did not seek his permission before moving to continue.  Like the movant in <u>Thomas</u>, this allegation does not entitle Mr. Gallardo to relief under § 2255.  <u>Thomas</u>, 737 F.3d at 1209.  Accordingly, this court recommends dismissing Mr. Gallardo's STA claim on the merits because he has not shown deficient performance by counsel.

In addition, Mr. Gallardo has failed to demonstrate prejudice.  As the Supreme Court has recognized, delay often favors a criminal defendant.  <u>Barker v. Wingo</u>, 407 U.S. 514, 521 (1972).  Without a showing by Mr. Gallardo

of how the two-month delay occasioned by counsel's motion harmed him, he cannot meet the second prong of the <u>Strickland</u> test.  He points to no evidence that was lost as a result of the delay nor any other adverse development.  The court finds Mr. Gallardo's claim fails under both <u>Strickland</u> prongs.

In resolving this issue, the court does not decide whether Mr. Gallardo's signature on the STA waiver form was his actual signature.  However, should the court undertake that analysis, it is significant that counsel typed her client's name on the form as "Frank Gallardo" but the form is signed "Frank Thunder Hawk."  CR Docket No. 22.  If counsel were going to forge a client's signature, it seems logical to the court that counsel would ensure the typewritten name corresponded to the cursive signature.  Why would a forger cast doubt on her forged document by inserting a discrepancy like a variance between the typed and cursive names?  Furthermore, the signature on the STA waiver does bear a nearly-identical resemblance to Mr. Gallardo's admitted signature on his waiver of an identity hearing.  <u>Compare</u> CR Docket No. 22, <u>with</u> CR Docket No. 13-2.  In any case, determining whether a forgery occurred is not necessary to the resolution of this issue.

### 3.    Mr. Gallardo's Right-to-Testify Claim

Mr. Gallardo's argument that he was denied the right to testify on his own behalf is not procedurally defaulted nor was it decided on appeal.  At trial, after the last defense witness testified and the jury left the courtroom, Ms. Patterson stated to the court, "I just wanted to confirm my discussion I have had with my client regarding whether he will testify or not, because we are

essentially ready to close, depending on that.  I just wanted to double confirm that."  CR Docket No. 165 at p. 32 (Trial Transcript (TT) at p. 255).

The court responded, "That's an important decision.  Take all the time you need for that."  Id.  Counsel then inquired whether the court would want to have a colloquy with Mr. Gallardo on the record concerning his right to testify. Id. at p. 33 (TT at p. 256).

The court responded that "I don't involve myself with colloquy about that decision.  That is a decision that belongs to Mr. Gallardo alone.  You can advise him."  Id.

After a recess, court reconvened and defense counsel announced that the defense rested their case.  Id.  Mr. Gallardo did not speak up or ask the court to take another recess.  Id.

In Ms. Patterson's affidavit submitted herein, she states that during the recess she discussed with Mr. Gallardo the possibility of him testifying and that he made the decision not to testify.  Docket No. 18 at p. 3, ¶ 4.  Counsel described the risks of testifying:  Mr. Gallardo would be cross-examined by an experienced federal prosecutor and Mr. Gallardo might open the door to the introduction of the flight evidence and a prior warrant for Mr. Gallardo's arrest in another matter.  Id.  Counsel states under oath she would never have prevented Mr. Gallardo from testifying if he wanted to.  Id.

Mr. Gallardo offers no details regarding what he and his counsel discussed during the recess.  He never asserts in this § 2255 action that he told Ms. Patterson he wanted to testify.  And, as indicated above, he did not

protest or make any remarks when court reconvened and counsel announced that the defense rested.  Furthermore, he makes no representation about *what* he would have testified to had he been called as a witness.

The accused has a constitutional right to testify in his own defense. Rock v. Arkansas, 483 U.S. 44, 49 (1987).  As discussed above, the right to testify is one of the "fundamental" rights the Supreme Court has recognized belongs to the accused and only the accused.  Thomas, 737 F.3d at 1208.  Any waiver of the right to testify must be knowing and voluntary.  United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987).

As the Eighth Circuit noted in its decision in Mr. Gallardo's case, circuit case law provides that a defendant's silence when his lawyer announces that the defense has rested its case without calling the defendant to testify is sufficient to show a knowing and voluntary waiver of the right to testify. Gallardo, 970 F.3d at 1048 (citing Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998)).  When counsel announces that the defense rests without calling the accused to testify, the defendant under these circumstances "must act 'affirmatively' rather than apparently 'acquiesc[ing] in his counsel's advice that he not testify, and then later claim[ing] that his will to testify was overcome.' " Frey, 151 F.3d at 898.

Here, Mr. Gallardo did not act on his right to testify at the time during the trial and he offers no evidence in this § 2255 action other than his conclusory assertion that he was "denied his right to testify."  Under Frey, the court concludes Mr. Gallardo made a knowing and voluntary waiver of his right

to testify during his trial.  As such, counsel was not ineffective for failing to call him as a witness.

In addition, because Mr. Gallardo offers no clues to the substance of *what* he would have testified to had he been called, he fails to demonstrate prejudice.  The court recommends dismissing this claim on the merits as well.

**E.    No Hearing Is Warranted.**

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" United States v. New, 652 F.3d 949, 954 (8th Cir. 2011) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)).  "A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).

Here, Mr. Gallardo's claims are rebutted by the record or, even if taken as true, do not warrant relief.  Therefore, no hearing is warranted.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 23], and dismissing Mr. Gallardo's § 2255 motion with prejudice and without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 14th day of September, 2022.

*BY THE COURT:*

VERONICA L. DUFFY
United States Magistrate Judge

26